THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| DR YEDIL DYUSSEMBAYEV, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | No. 3:25-CV-00208-LS-MAT |
| | § | |
| TEXAS TECH UNIVERSITY HEALTH | § | |
| SCIENCES CENTER – EL PASO, DR | § | |
| PETER CATINELLA, ALEJANDRA | § | |
| LUJAN, DR ARMANDO MEZA, JAVARIA | § | |
| ANWER, TTUHSC EL PASO GRADUATE | § | |
| MEDICAL EDUCATION COMMITTEE, | § | |
| and JOHN DOE(S) 1-10, | § | |
| | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION

Before the Court are "Defendants' Second Motion to Dismiss" ("Motion"), filed by Javaria Anwer, Peter Catinella, Alejandra Lujan, Armando Meza, TTUHSC El Paso Graduate Medical Education Committee, and Texas Tech University Health Sciences Center – El Paso on October 15, 2023. (ECF No. 39). The matter was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Court Rule CV-72 for a Report and Recommendation on December 4, 2025, by United States District Judge Leon Schydlower. (ECF No. 54). For the reasons set forth below, the Court **RECOMMENDS** that Defendant' Second Motion to Dismiss be **GRANTED.** The Court further **RECOMMENDS** that the three other referred motions (Plaintiff and Defendants' filings related to Defendants' Motion to Dismiss, ECF Nos. 47, 49, and 53) be **DISMISSED** as **MOOT**.

I.    **Background**

A.    **Procedural Background**

1

Plaintiff Yedil Dyussembayev, proceeding *pro se*, filed this case on April 29, 2025 in the Southern District of Texas, Houston Division. ECF No. 1. It was transferred to the Western District of Texas, El Paso Division, on June 11, 2025. ECF No. 8. Defendants filed a Motion to Dismiss on September 15, 2025. ECF No. 35. Plaintiff amended his complaint on September 28, 2025 rendering the original Motion to Dismiss moot.[1] ECF No. 35; Text Order on October 1, 2025. Defendants filed the instant Motion to Dismiss on October 15, 2025. ECF No. 39. Plaintiff filed his "Opposition to Defendant's Renewed Motion to Dismiss on October 29, 2025. ECF No. 44.[2] Defendants filed "Defendants' Reply in Support of its Second Motion to Dismiss" on November 6, 2025. ECF No. 46.

### B.    Factual Background[3]

Yedil Dyussembayev ("Plaintiff") is a Kazakh national and was a former resident physician at Texas Tech University Health Sciences Center at El Paso ("TTUHSC"). Pl.'s Am. Compl., ECF No. 37 ¶¶3-4. Plaintiff was dismissed on November 15, 2024, following a four-month probation period. *See id.* ¶ 21. He brings claims against TTUHSC as "the employing entity under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act of 1973, based on discrimination, retaliation, and failure to

---

[1] "An amended complaint supersedes the original complaint and renders it of no legal effect . . . ." *New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1033 (5th Cir. 2023) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam)).

[2] The Court notes that throughout Plaintiff's Response to Defendants' Motion to Dismiss ECF No. 44, Plaintiff accuses Defendants of arguing positions in their Motion to Dismiss, ECF No. 37, that the Court is unable to find. Instead, as pointed out by Defendants' Reply in Support of its Second Motion to Dismiss, ECF No. 46, there are over fifty instances where Plaintiff portrays arguments that Defendants did not make as ones Defendants did. *See* ECF No. 46, Ex. B. Additionally there are clear uses of generative artificial intelligence throughout. *See* ECF No. 44 at 18 ("ChatGPT said: . . ."). "The Court restates the obvious, without repercussion for the *pro se* litigants here (and as a warning for others). While artificial intelligence can, and will continue to be a useful resource for locating legal authorities, the case citations and conclusions it offers may still be incorrect. Parties are advised, as many courts have already stated in this quickly-evolving area, to double-check their arguments and citations before submitting them to the Court." *Woodmen of World Life Insurance Society v. Hale*, SA-24-CV-00799-XR, 2025 WL 2946627, at *4 (W.D. Tex. May 30, 2025).

[3] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

accommodate." *Id.* ¶18. He also brings claims against Peter Catinella, Alejandra Lujan, Armando Meza, and Javaria Anwer ("individually named defendants") "in their individual capacities . . . under 42 U.S.C. § 1983 for violations of the Plaintiff's constitutional rights, including procedural due process (Count III), equal protection (Count VIII), and First/Fourteenth Amendment violations. They are also sued for common-law defamation (Count V) where they personally published false statements with actual malice." *Id.* ¶19. He also sues the individually named defendants "in their official capacities . . . solely for prospective injunctive and declaratory relief to halt ongoing violations of federal law, including the maintenance and dissemination of false records, the refusal to provide a name-clearing hearing, and the refusal to expunge fabricated disciplinary findings. Such claims proceed under the doctrine of Ex parte Young, 209 U.S. 123 (1908)." *Id.* ¶20. Plaintiff also brings state law breach of contract claims against the individually named defendants in their official capacities.

## II.    Legal Standards

### A.    *Pro Se* Pleadings

*Pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction, including all reasonable inferences that can derived from them. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). That said, "a *pro se* party is in no way exempted from compliance with the relevant rules of procedure and substantive law." *Kaswatuka v. United States Dep't of Homeland Security*, 7 F.4th 327, 331 (5th Cir. 2021) (quoting *Quevedo v. Army & Air Force Exch. Serv.*, 234 F.3d 29, 2000 WL 1568186, at *1 (5th Cir. 2000) (per curiam)).

### B.    12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Of Am.*, 375, 377 (1994). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississipi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### C.    12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.' " *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338.

Courts "disregard[] bare assertions of collective responsibility, unsupported by concrete factual allegations." *Martinez v. City of N. Richland Hills*, 846 F.App'x 238, 243 (5th Cir. 2021). When referring to a group of defendants collectively, each defendant must be able to discern what is alleged against it. *See id.*; *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) ("[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant[.]"); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

5

III.    **Discussion**

A.    **Defendants' Motion to Dismiss**

Defendants argue that the Court should dismiss all of Plaintiff's claims because

> 1. TTUHSC is entitled to sovereign immunity for Plaintiff's ADA claims;
> 2. Plaintiff failed to exhaust required administrative remedies for his Title VII claims;
> 3. The individually named defendants are entitled to sovereign immunity for claims brought against them in their official capacities;
> 4. The individually named defendants are entitled to qualified immunity for federal claims brought against them in their individual capacities;
> 5. The individually named defendants are entitled to official immunity for Plaintiff's state law claims brought against them in their individual capacities; and
> 6. Plaintiff fails to allege sufficient facts to state a claim upon which relief may be granted.

Defs.' Second Mot. to Dismiss, ECF No. 39, at 11.

1.    **Plaintiff's ADA Claims Against TTUHSC are barred by Sovereign Immunity.**

"Federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies." *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002). The Eleventh Amendment recognizes the background constitutional principle that states, as separate sovereigns, are inherently immune from suit without their consent. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 39-40 (1994); *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996). That immunity extends to so-called arms of the state, entities which are effectively the state itself because "the state is the real, substantial party in interest" to the lawsuit. *Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999) (quoting *Pendergrass v. Greater New Orleans Expressway Comm'n*, 144 F.3d 342, 344 (5th Cir. 1998)); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977);

*Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 178 (5th Cir.), *cert. denied sub nom. Springboards to Educ., Inc. v. IDEA Pub. Schs.*, 144 S. Ct. 183 (2023), and *cert. denied*, 144 S. Ct. 191 (2023). "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The only exceptions to sovereign immunity are (1) clear waiver or consent to suit by the sovereign, (2) valid abrogation by Congress, and (3) the state's amenity to suit under *Ex parte Young*. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990); *Sossamon v. Texas*, 563 U.S. 277, 283-85 (2011); *Ex parte Young*, 209 U.S. 123 (1908).

Plaintiff alleges disability discrimination, retaliation, hostile work environment, and failure to accommodate against TTUHSC in violation of the Americans with Disabilities Act. *See* Pl.'s Am. Compl., ECF No. 37, ¶¶58-80, 104-115. Plaintiff alleges he "engaged in protected activity by requesting accommodations for disability and by opposing discrimination on the basis of national origin and visa dependency. In response, Defendants retaliated with fabricated complaints, ambush probation, and dismissal." *Id.* ¶61. He asserts he "engaged in protected activities by opposing discriminatory insurance practices, requesting visa assistance, and disclosing his disability." *Id.* ¶64. Plaintiff alleges he "was subjected to a hostile work environment . . . on account of disability and perceived disability, actionable under the ADA." *Id.* ¶106. He also alleges he was "subjected to repeated threats, fabricated allegations, and retaliation." *Id.* ¶110. He alleges "[t]he harassment was based on his disability and protective activities." *Id.* ¶111. Plaintiff argues that "TTUHSC, acting through Program Director Dr. Catinella, ignored Plaintiff's legitimate explanation for tardiness arising from a car accident and

autism therapy obligations for his daughter. Instead of providing accommodations, TTUHSC treated these caregiving responsibilities as professional deficiencies." *Id.* ¶112.

While Plaintiff makes clear he is suing TTUHSC under the ADA, it is unclear which of the ADA's three Titles he is suing under. Plaintiff clarified in his response that his "ADA claim is—and always has been—confined to Title I and seeks : 1. Prospective injunctive and declaratory relief under *Ex parte Young*; and 2. Monetary damages, if any, only under the Rehabilitation Act. . ." Opp'n to Defs.' Renewed Mot. to Dismiss, ECF No. 44., at 12. Plaintiff is suing TTUHSC as his employer under Title I. 42 U.S.C. § 12112; *see Haines v. Kerner*, 404 U.S. at 520-21; *see also Moss v. Harris. Cnty. Constable Precint One*, 851 F.3d 413, 420 (5th Cir. 2017) (clarifying that Title II of the ADA does not create a cause of action for employment discrimination); Pl.'s Am. Compl., ECF No. 37, ¶59 ("Americans with Disabilities Act (ADA) [claims] are asserted against Defendant TTUHSC El Paso, the employing entity, and not against individual defendants.").

Texas state universities are state agencies and enjoy sovereign immunity. *Jackson v. Texas S. Univ.*, 997 F.Supp. 2d 613, 623 (S.D. Tex. 2014). "When a suit is brought against any one of the State's agencies or departments, the suit is considered one against the State for Eleventh Amendment purposes, and immunity attaches." *Rosas v. Univ. of Tex. at San Antonio*, No. 5:18-cv-536-DAE, 2019 WL 13318687, at*3 (W.D. Tex. May 9, 2019) (citing *Pennhurst State Sch & Hosp. v. Halderman*, 456 U.S. 89, 100 (1984)). Therefore, as a state institution Texas Tech University Health Sciences Center is cloaked with sovereign immunity. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 n. 3 (5th Cir. 1996).

While the United States Congress attempted to abrogate sovereign immunity when enacting Title I of the ADA, the Supreme Court of the United States clarified that Congress did

not act pursuant to valid constitutional authority and therefore did not abrogate States' sovereign immunity. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 365-74 (2001). "*Garrett* examined whether, in Title I of the ADA, Congress could constitutionally abrogate the states' Eleventh Amendment immunity. The *Garrett* Court concluded that Title I of the ADA was outside the scope of valid § 5 legislation; therefore, Congress's attempt at abrogation failed, and private suits against states in federal court were barred by the Eleventh Amendment." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 282–83 (5th Cir. 2005).

Plaintiff "does not seek monetary damages under the ADA, but seeks prospective injunctive and declaratory relief against appropriate officials under *Ex Parte Young* to halt ongoing violations." Pl.'a Am. Compl., ECF No. 37, ¶74. Yet Plaintiff specifically argues his "Americans with Disabilities Act (ADA) [claims] are asserted against Defendant TTHUSC El Paso, the employing entity, and not against individual defendants." First. Am. Compl. ¶59; see also ¶ 18 ("Plaintiff does not seek Title VII or ADA liability against individual defendants.").

The *Ex parte Young* exception, "is a long-recognized exception to Eleventh Amendment immunity, which permits suits against individual state officials sued in their official capacity for prospective injunctive relief to enjoin violations of federal law." *Smith v. Univ. of Tex. at San Antonio*, SA-23-CV-00538-OLG, 2024 WL 4256461, at *8 (W.D. Tex. Aug. 21, 2024) (citing Ex parte *Young*, 209 U.S. 123, 155–55 (1908)). "The Fifth Circuit has recognized that '*Ex Parte Young* only permits injunctions against state officials who 'have some connection with the enforcement of the act' or are 'specially charged with the duty to enforce' the [federal] law at issue.'" *Id.* (quoting *United States v. Abbott*, 85 F.4th 328, 334 (5th Cir. 2023)). A proper defendant under *Ex Parte Young*, must have "the particular duty to enforce the [federal] statute in question and a demonstrated willingness to exercise that duty." *Morris v. Livingston*, 739 F.3d

740, 746 (5th Cir. 2014) (internal quotation and citation omitted). This requirement may also be met by showing there is a "general duty imposed" on the state officer that "includes the right and the power to enforce the statutes of the State, including, of course, the act in question, if it were constitutional." *Smith v. Univ. of Tex. at San Antonio*, 2024 WL 4256461, at *8 (citing *Ex Parte Young*, 209 U.S. at 161, 158); *see also Okpalobi v. Foster*, 244 F.3d 405, 416–17 (5th Cir. 2001). This determination is made by reference to state law. *Okpalobi*, 244 F.3d at 417.

Here, Plaintiff's ADA claims are brought solely against TTUHSC and not against any individually named defendant. Because Plaintiff is not bringing ADA claims against individually named defendants Plaintiff cannot obtain injunctive relief against them. Additionally, as a state entity, not an individual, the *Ex parte Young* doctrine cannot apply to Plaintiff's claims. Therefore, Plaintiff's request for injunctive relief is unfit and the Court **RECOMMENDS** his ADA claims against TTUHSC be **DISMISSED** because they are barred by sovereign immunity.

**2.    Plaintiff's claims against the individually named Defendants in their official capacities is barred by sovereign immunity.**

Plaintiff alleges 14th Amendment procedural due process violations and equal protection violations under 42 U.S.C. § 1983, state law defamation, and state law breach of contract claims against the individually named defendants, in both official and individual capacities. Pl.'s Am. Compl. ¶¶ 81-103, 116-35, 140-45. Defendants argue that individually named defendants are "entitled to sovereign immunity for official capacity claims, qualified immunity for individual capacity federal law claims, and official immunity for individual capacity state law claims." Defs' Second Mot. to Dismiss., ECF No. 39, at 10.

a)    **Plaintiff's Federal Claims Against Individually Named Defendants in their Official Capacity are Barred by Sovereign Immunity.**

"[S]tate sovereign immunity precludes suits against officials in their official capacity." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020). "In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). Claims against individual defendants in their official capacities are duplicative and should be dismissed. *Jones v. Katy ISD*, No. 4:24-CV-1039, 2025 WL 816719, at *2 (S.D. Tex. Mar. 13, 2025).

Here, individually named defendants are state officials as employees of TTUHSC. Tex. Gov't Code § 572.002(11) (defining "state employee" as "an individual, other than a state officer, who is employed by: (A) a state agency[.]"). Additionally, "Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. §§ 1981, 1983, and 1985." *Baldwin v. Univ. of Tex. Med. Branch at Galveston*, 945 F.Supp. 1022, 1030 (S.D. Tex. 1996), *aff'd*, 122 F.3d 1066 (5th Cir. 1997) (dismissing plaintiff's §1983 and defamation claims against the university and official capacity defendants as barred by sovereign immunity); *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) (holding that Texas and its officials sued in their official capacities are immune in a § 1983 action because Texas has not waived sovereign immunity). Therefore, the Court **RECOMMENDS** Plaintiff's due process and equal protection claims under § 1983 against individually named Defendants in their official capacities be **DISMISSED** because they are barred by sovereign immunity.

> b)    **Plaintiff's Defamation Claims Against Individually Named Defendants in their Official Capacity are Barred by Sovereign Immunity.**

Making all inferences in Plaintiff's favor considering his *pro se* status, the Court understands his defamation claims to be entirely state law defamation claims against the individual defendants. Plaintiff makes claims under the Texas Tort Claims Act ("TTCA") against

11

individually named defendants. Pl.'s Am. Compl. ¶¶3, 26, 45, 57, 59, 116-29. The TTCA addresses the State of Texas and its governmental units' waiver of immunity for certain property damage, personal injury, and other negligence-based torts. *See* Tex. Civ. Prac. & Rem. Code § 101.021. The TTCA provides that "[a] suit under this chapter shall be brought in state court in the county in which the cause of action or a party of the cause of action arises." *Id.* § 101.102(a). The Fifth Circuit has found that the TTCA does not waive sovereign immunity to suit in federal court. *Sherwinski v. Peterson*, 98 F.3d 849, 851-52 (5th Cir. 1996) ("[W]e find that the [TTCA] waives sovereign immunity in state court only. . . . [It] does not waive Eleventh Amendment immunity to suit in federal courts.").

The TTCA's waiver of sovereign immunity and governmental immunity from some tort claims expressly does not apply to claims "arising out of assault, battery, false imprisonment, or *any other intentional tort*." Tex. Civ. Prac. & Rem. Code Ann. §101.057(2) (emphasis added). Notably, the TTCA "does not waive sovereign immunity for intentional torts, including *defamation*." *Baldwin*, 945 F. Supp. at 1030 (emphasis added) (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.057; *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App. – Houston [1st Dist.] 1995, no writ) (explaining that the TTCA does not waive immunity for intentional torts).

Texas common law defines defamation as " (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases. *WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998); *see also Waste Mgmt. of Tex.,* 434 S.W.3d at 146 n.7 (Tex. 2014); *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). Even if Plaintiff's claims are interpreted as Texas common law claims against Defendants in their official capacities, they are barred by sovereign immunity as

Texas has not waived sovereign immunity for common law torts nor has the United States Congress abrogated Texas' sovereign immunity. *See generally Feeney* 495 U.S. at 304; *Sossamon v. Texas*, 563 U.S. at 283-85; *Ex parte Young*, 209 U.S. 123 (1908).

Because Plaintiff's claims were brought in Federal court, not State court and because Texas has not waived sovereign immunity for defamation, Plaintiff's claims against the individual defendants in their official capacities are barred by sovereign immunity. Accordingly, the Court **RECOMMENDS** Plaintiff's Defamation claims against individually named Defendants in their official capacities be **DISMISSED** because they are barred by sovereign immunity.

### c) Plaintiff's Breach of Contract Claims Against Individually Named Defendants in their Official Capacity are Barred by Sovereign Immunity.

Plaintiff brings breach of contract claims against all defendants. Pl.'s Am. Compl., ECF No. 37, ¶¶130-35. State immunity to breach of contract claims can only be waived by the State Legislature through a statute or by its express consent on dispute-by-dispute basis. *Zachry Constr. Corp. v. Port of Hous. Auth.*, 449 S.W.3d 98, 121 (Tex. 2014); *see* Tex. Civ. Prac. & Rem. Code §§107.001-.005 (governing resolutions granting permission to sue the state of Texas).

The Texas Legislature has not waived sovereign immunity for breach of contract claims. "absent special statutory permission, a party cannot pursue a breach of contract action against the State without first obtaining consent from the Legislature under chapter 107 of the Texas Civil Practice and Remedies Code." *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007).

Plaintiff agrees, in his Amended Complaint he states "Plaintiff acknowledges that Texas courts have held sovereign immunity bars breach of contract damages against state universities

absent legislative waiver." Pl.'s Am. Compl., ¶ 135. "To the extent sovereign immunity limits remedies in this forum, Plaintiff seeks only declaratory and prospective relief under *Ex parte Young*, 209 U.S. 123 (1908), requiring compliance with institutional and [Accreditation Council for Graduate Medical Education ("ACGME")] policies in ongoing or future proceedings." Pl.'s Am. Compl., ¶ 135.

Because Plaintiff brings breach of contract claims against all Defendants in their official capacities as state officials, Pl.'s Am. Compl. ¶ 148, and all Defendants are entitled to sovereign immunity as described above, Plaintiff's breach of contract claims are barred by sovereign immunity. Therefore, the Court **RECOMMENDS** that Plaintiff's breach of contract claims against individually named Defendants in their official capacities be **DISMISSED** because they are barred by sovereign immunity.

> d) ***Ex parte Young* does not Apply to Plaintiff's Claims for Injunctive Relief**

As discussed above in Part III.A.I., the first two exceptions to sovereign immunity do not apply to the individually named defendants in their official capacities. The third exception under *Ex parte Young*, requires Plaintiff to (1) "name individual state officials as defendants in their official capacities; (2) the plaintiff must allege an ongoing violation of federal law; and (3) the relief sought must be properly characterized as prospective." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (quoting *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020) (*en banc*)).

"To satisfy the final *Young* requirement, [Plaintiff] must seek *prospective* relief. In other words, 'a complaint must allege that the defendant is violating federal law, not simply that the defendant has done so.'" *Dobbin Plantersville Water Supply Corp. v. Lake*, No. 1:21-CV-00612-

RP, 2022 WL 2718985, at *4 (W.D. Tex. July 13, 2022) (quoting *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (emphasis added).

Here, because Plaintiff does not seek prospective relief premised on an ongoing constitutional violation, he cannot avail himself of the third exception under *Ex parte Young*. Plaintiff requests the following actions from the named defendants in their official capacities: (a) "[r]etract and expunge all adverse records related to Plaintiff's probation and termination; b. Issue a neutral or positive letter of reference; c. . . . issuing corrective statements, engaging with immigration authorities, and providing affirmative support letters, to restore Plaintiff's eligibility for visa renewal, transfer, and participation in ACGME-accredited programs." Pl.'s Am. Compl., ¶ 150.

In the alternative, Plaintiff seeks front pay and benefits, but those and other forms of monetary relief are not available. *See Jones v. Texas Juv. Just. Dep't*, 646 F. App'x 374, 376-77 (5th Cir. 2016); *see also Edelman v. Jordan*, 415 U.S. 651, 63 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.").

As will be discussed *infra*, Plaintiff contends that maintaining his personnel file constitutes an ongoing violation of federal law subject to equitable relief. However, he does not identify what federal law is violated by these actions. Instead, Plaintiff characterizes these actions generically as violations of federal law. His claim largely fails on this basis. None of Plaintiff's requests, nor any other of Plaintiff's assertions are based on an ongoing violation of federal law. Instead, his claims are premised on past, alleged actions. Plaintiff's allegation that his personnel file continues to be maintained is not enough to establish an ongoing violation of his rights because it contradicts other allegations Plaintiff makes indicating that the information

was disseminated to licensing boards in the past. Pl.'s Am. Compl. ¶¶ 20, 96, 99.

Plaintiff continues to allege, without providing factual statements in support, that Defendants falsified or fabricated several records and statements. *Id.* ¶¶30, 125, 126. Plaintiff claims that when he "took over a complex patient after a 40-minute wait created before his involvement, performed guideline-concordant evaluation . . . Faculty later recast the visit length as 'dangerous care,' ignoring preexisting delays and required screening." *Id.* ¶30. He also alleges that "Defendants defamed Plaintiff by altering and publishing a false account of a tardiness incident. . . . This altered version was carried forward into Plaintiff's personnel and training file, disseminated to program leadership, and cited as evidence of unprofessionalism." *Id.* ¶ 125. Plaintiff also alleges that when he was late to an orientation session on "June 19, 2024 due to a car accident recovery and his daughter's autism therapy appointment. . . . the explanation was disregarded. Instead, the incident was later altered in the record to appear as a one-hour absence on June 21, 2024, exaggerating its severity." *Id.* ¶41.1. Claims related to these specific factual allegations fail. The reason is two-fold. First, they are completely conclusory. "Courts do not accept as true conclusory allegations, unwarranted by factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 695 (5th Cir. 2005). Second, the Plaintiff fails to identify an ongoing constitutional violation. Disregarding all conclusory allegations, Plaintiff fails to plead an ongoing violation of federal law or relief that is actually *prospective*.

*Ex parte Young* is "inapplicable in a suit against state officials on a basis of state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Plaintiff cannot obtain injunctive relief against individually named Defendants under his state law defamation and breach of contract claims. Because no sovereign immunity exception applies, Plaintiff's claims against the individually named defendants in their official capacities are barred by sovereign

immunity. Accordingly, the Court **RECOMMENDS** these claims be dismissed for lack of subject-matter jurisdiction.

  e) **The individually named defendants are immune from claims in their individual capacities.**

To the extent Plaintiff brings the same federal claims against individually named defendants in their individual capacities as in their official capacities, defendants are entitled to qualified immunity under 42 U.S.C. § 1983. "Qualified immunity is immunity from suit rather than a mere defense to liability." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Qualified immunity "shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly establish statutory or constitutional law or which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

"Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available." *Langiano v. City of Fort Worth, Texas*, 131 F.4th 285, 292 (quoting *Kovacic v. Villareal*, 628 F.3d 209, 211 (5th Cir. 2010)). To meet this burden, the plaintiff must plead "specific facts" "showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020); *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established for purposes of the second step of the qualified-immunity analysis if it would be clear to every reasonable official, at the time of the challenged conduct, that his or her conduct violated the statutory or constitutional right at issue. *al-Kidd*, 563 U.S. at 741 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

At the motion-to-dismiss stage, it is "the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Ramos v. Taylor*, 646 F. Supp. 3d 807, 817 (W.D. Tex. 2022) (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). Because qualified immunity provides immunity not only from monetary liability, but also immunity from having to stand trial, "there is an interest in qualified immunity entering a lawsuit 'at the earliest possible stage of litigation.'" *Nunn v. Converse Police Dep't*, No. SA-24-CV-00935-FB, 2025 WL 2946187, at *5 (W.D. Tex. May 22, 2025), *report and recommendation adopted*, No. SA-24-CV-935-FB, 2025 WL 2673904 (W.D. Tex. Sept. 17, 2025) (quoting *Arnold*, F.3d at 267).

"To rebut the qualified immunity defense, a plaintiff must show that (1) the allegations make out a violation, and (2) the violation was "clearly established" at the time of the defendant's conduct. *Kovacic*, 628 F.3d at 211. To do so, the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.'" *Reyes v. City of Austin, Inc.*, No. 1:21-CV-00992-LY-SH, 2022 WL 789333, at *5 (W.D. Tex. Mar. 15, 2022), *report and recommendation adopted sub nom. Reyes v. City of Austin*, No. 1:21-CV-992-LY, 2022 WL 22433459 (W.D. Tex. May 10, 2022) (internal citation modified) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). Courts must accept all factual allegations as true, but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly v. Iqbal*, 556 U.S. at 678 (2009).

Here, Plaintiff alleges that obstruction of his procedural due process and equal protection rights in violation of the Fourteenth Amendment. Pl.'s Am. Compl. ¶¶81-103, 140-45. These fail both prongs of qualified immunity analysis because Plaintiff pleads insufficient,conclusory facts

that each of the individually named defendants took actions which violated his constitutional rights and that those rights were clearly established. The Court addresses these claims in turn.

### (1)    Procedural Due Process Claims

For a procedural due process claim, Plaintiff must show he was deprived of (1) a constitutionally cognizable life, liberty, or property interest (2) without adequate due process. *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citing *Zinermon v. Burch*, 494 U.S. 113 (1990)).

Plaintiff claims he has a "property interest in continued participation in the residency program." Pl.'s Am. Compl., ¶ 83. However, there is no "fundamental right to work" in the United States. *Golden Glow Tanning Salon, Inc. v. City of Columbus, Mississippi*, 52 F.4th 974, 979 (5th Cir. 2022). As the Supreme Court of the United States put it in *Conn v. Gabbert*, "the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation." *Golden Glow Tanning Salon, Inc.*, 52 F.4th at 979 (quoting *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999)).

Notably, "the 'right' to be admitted to a profession, including medicine, is not fundamental per se in the constitutional sense." *Maceluch v. Wysong*, 680 F.2d 1062, 1065 (5th Cir. 1982). "[M]edical residents are  not employees protected by the due process clause," and they are not entitled to the full force of Fourteenth Amendment protections. *Shaboon v. Duncan*, 252 F.3d 722, 732 (5th Cir. 2001) (citing *Davis v. Mann*, 882 F.2d at 974 (5th Cir. 1989) (holding that a fired medical resident was not entitled to a pre-dismissal hearing because her "memorandum of understanding gave her the right to discuss her grievances informally, but did not require a formal hearing; there was no implicit agreement that the Hospital District could terminate her only for cause.")).

For public employment to present a property interest "a person clearly must have more than an abstract need or desire for it. He must have more than unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Udeigwe v. Texas Tech Univ.*, 733 F. App'x 788, 792 (5th Cir. 2018) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "Generally, no [legitimate right to continued employment] exists unless 'the public entity has acted to confer, or alternatively, has created conditions which [imply], the existence of a property interest by abrogating its right to terminate an employee without cause.'" *Rosario v. Texas Veterans Commission*, No. A-18-CV-1008-RP, 2019 WL 5595234, at *6 (W.D. Tex. Oct. 29, 2019) (quoting *Muncy v. City of Dall.*, 335 F.3d 394, 398 (5th Cir. 2003) (finding no property interest existed where the only basis Plaintiff plead for one was "solely on his allegation of an implied contract created by the TVC Employee Handbook and TVC documentation provided to Plaintiff."); *see also Zimmerman v H.E.Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir. 1991) (holding that although the employee handbook "contained fairly detailed procedures for discipline and discharge," it "did not provide that employees would only be discharged for good cause" and did not alter the employee's at-will status)). "In Texas, there exists a presumption that employment is at-will, unless that relationship has been expressly altered . . . by contract . . . or by express rules or policies limiting the conditions under which an employee may be terminated." *Muncy v. City of Dall.*, 335 F.3d at 398 (citations omitted). "[A]bsent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Montgomery Cnty. Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex. 1998)).

Accordingly, to advance his due process claim in connection with his termination, Dr. Dyussembayev must "point to some state or local law, contract or understanding that creates a

property interest in" his continued employment. *Gentilello*, 627 F.3d at 545. "Absent a property interest, there is nothing subject to due process protections and our inquiry ends." *Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997). "'Texas law "general[ly] reject[s] the claim that employment manuals issued unilaterally by an employer can per se constitute written employment contracts and create specific limitations which take the cases of the at-will doctrine.' " *Heggemeier v. Caldwell Cnty, Texas*, 826 F.3d 861, 871 (5th Cir. 2016) (quoting *Zimmerman*, 932 F.2d at 471 (5th Cir. 1991) (alterations in original)).As shown below, Plaintiff fails to demonstrate his "legitimate claim of entitlement" to his residency. *See Udeigwe*, 733 F. App'x at 792.

Plaintiff claims a property interest in his participation in the residency program which he alleges he was deprived of "without adequate notice, opportunity to respond, or a fair hearing." Pl.'s Am. Compl., ¶ 84. Plaintiff also contends that his property interest arises from "Plaintiff's residency contract and incorporated institutional policies, which guaranteed fair remediation, timely access to evaluation records, and a meaningful appeal process." *Id.*, ¶83. However, Plaintiff does not make allegations to defeat his residency program's at-will presumption subject to termination at any time for "good cause, bad cause, or no cause at all." *Gentilello*, 627 F.3d at 544 (quoting *Montgomery Cnty. Hosp. Dist.*, 965 S.W.2d at 502).

In attempting to identify the specific property interest he claims he had, Plaintiff refers to some contract relationship with Defendants. However, it is unclear what specific contract he refers to as none has been identified or provided by him. By failing to identify a contract or its provisions, Plaintiff fails to show how he has a property interest in the residency. The Court is left with only vague references to some unidentified contract relationship alleged by Plaintiff.

A core purpose of a medical residency program is to train physicians and make sure they

are competent before allowing them to practice medicine independently. *See Davis v. Mann*, 882 F.2d 967, 974 (5th Cir. 1989). Successful completion "depends upon subjective evaluations by trained faculty members" and completion "should not be weighted down with formalized procedural requirements imposed by actors estranged from the academic environment." *Id.* at 974. As such, faculty members wield ample discretion in probationary and disciplinary matters. *See id.*

As indicated in *Maceluch*, "the 'right' to be admitted to a profession, including medicine, is not fundamental per se in the constitutional sense." *Maceluch v. Wysong*, 680 F.2d at 1065. Although Residents are generally not entitled to the full force of Fourteenth Amendment protections, *Shaboon*, 252 F.3d at 722, they are entitled, however, to procedural safeguards such as notice and an opportunity to respond. *Davis*, 882 F.2d at 975. The facts before the Court show that the Plaintiff unquestionably received sufficient procedural consideration.

Plaintiff complains of several procedural deficiencies by Defendants. Plaintiff alleges he did not receive proper notice of Defendants' evidence before his appeal hearing. Pl.'s Am. Compl., ¶¶ 37, 39. In August 2024 he was placed on probation due to his performance "below the level of an early intern." *Id.* ¶ 21. From August to November 2024, he participated in several meetings with faculty members about his performance. *Id.*, ¶ 35. He states in his complaint that "TTUHSC's Adverse Action Appeal Policy (effective May 23, 2023) required both the trainee and the Program Director to exchange 'all relevant documents' at least five business days before the appeal hearing. Defendants disregarded this requirement until January 6, 2025—only one day before the January 7, 2025, 5:00 p.m. Mountain Time submission deadline." *Id.*, ¶¶ 37 A – B. He had an appeal hearing January 14, 2025 where he had the opportunity to defend himself. *Id.* ¶¶ 36, 37 B. However, Plaintiff alleges that "[b]y delaying disclosure until the eve of the deadline,

Defendants transformed the policy into an exhaustion trap, depriving Plaintiff of meaningful notice and a fair opportunity to be heard, in violation of the Fourteenth Amendment." *Id.*, ¶ 37 D. Yet, making all inferences in Plaintiff's favor, he admits Defendants timely filed their evidence one day before their January 7, 2025 deadline in compliance with TTUHSC's internal policies. *Id.*, ¶ 37.

Plaintiff also contends that the individual defendants did not comply with TTUHSC's policies. *See id.*, ¶¶ 39, 40, 42. However, even if this were true, the Fifth Circuit has found that "a university's failure to follow its own internal rules does not always establish to a due process violation." *Wigginton v. Jones*, 964 F.3d 329, 338 (5th Cir. 2020) (citing *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985) (holding that language in a contract allegedly guaranteeing "fair process of tenure review" did not give rise to a clearly established property right)). Plaintiff does not identify a contract nor any authority that suggests participation in a residency program is an exception to the at-will presumption. Notably, Plaintiff does not identify any authority that the residency relationship is a contract relationship.

Because Plaintiff does not establish any property interest in his participation in the residency program, any actions taken by the individually named defendants could not have deprived Plaintiff of due process for a right that is not constitutionally protected. Moreover, even if Plaintiff were to have a property interest, he fails to show it is clearly established or that the individual defendants deprived him of his rights because he was afforded sufficient due process. Therefore, Plaintiff's Section 1983 claims under the due process clause of the 14th Amendment are barred by the individually named defendants' qualified immunity.

Accordingly, the Court **RECOMMENDS** that Plaintiff's Section 1983 claims against the individually named defendants be **DISMISSED** because they are barred by the individually

named defendants' qualified immunity.

> **(2)      Plaintiff's Equal Protection Claims are Barred by Qualified Immunity.**

Plaintiff also alleges equal protection violations for national origin-based disparate treatment and under the "class-of-one" theory against individually named defendants in their individual capacities. Pl.'s Am. Compl., ECF No. 37, ¶¶ 142-43. He alleges that "[n]o U.S.-born residents or residents without visa requirements were subjected to fabricated complaints, probation without remediation, or termination four days after requesting accommodations." *Id.* ¶142. He also alleges they "denied Plaintiff equal protection by selectively withholding procedural safeguards. Faculty consistently received advance agendas, written records, and minutes for critical meetings, while Plaintiff was summoned without notice, denied evidence, and confronted with accusations ranging from harassment to dismissal." *Id.* ¶143. Both claims fail the dual pronged qualified immunity analysis.

The Supreme Court of the United States has rejected the class-of-one theory, holding it does not apply to public employment because it is "contrary to the concept of at-will employment." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 606 (2008). The Constitution only forbids purposeful discrimination, "disparate impact alone cannot suffice to state an Equal Protection violation." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (citing *Washington v. Davis*, 426 U.S. 229, 264-66 (1977)). To prevail on his equal protection claim, Plaintiff "must allege that state actor intentionally discriminated against [him] because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999); *see also Piatt v. City of Austin*, 378 F. App'x 466, 168 (citing *Coleman v. Houston ISD*, 113 F.3d 528, 533 (5th Cir. 1997) ("[T]o state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the governmental official was motivated by

intentional discrimination . . .")).

Plaintiff does not plead any fact suggesting or indicating any of the individually named defendants acted with the intent to discriminate against him based on his national origin. Without a factual allegation indicating that the individually named defendants acted with an intentionally discriminatory animus that resulted in a discriminatory impact on Plaintiff, Plaintiff has failed to establish that the defendants violated his equal protection rights. *See Sneed v. Ibarra*, No. EP-17-CV-00072-PRM-ATB, 2017 1180965, at *5 (W.D. Tex. Mar. 29, 2017); *Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 800 (S.D. Tex. 2013). Therefore, Plaintiff's Section 1983 claims under the equal protection clause of the 14th Amendment are barred by the individually named defendants' qualified immunity.

Accordingly, the Court **RECOMMENDS** that Plaintiff's Section 1983 claims under the equal protection clause of the 14th Amendment against the individually named defendants be **DISMISSED** because they are barred by the individually named defendants' qualified immunity.

### f) Plaintiff's State Law Defamation Claims are Barred by Official Immunity.

State-law claims against state officials who are sued in their individual capacities are subject to Texas' "official immunity" doctrine. *See, e.g.*, *Dupont v. Linden*, 81 F.3d 155, 1996 WL 101418, at *2 (5th Cir. 1996) (*per curiam*) (applying Texas' official immunity doctrine to claims brought under state law against a state official in his individual capacity). As the Fifth Circuit has observed, "Texas' law of qualified or official immunity is substantially the same as federal immunity law," with the exception that Texas' official immunity doctrine does not include the "clearly established law" element that federal qualified immunity doctrine includes. *The Heidi Grp., Inc. v. Tex. Health & Hum. Servs. Comm'n*, No. A-22-CV-294-RP, 2023 WL 2717968, at *10 (W.D. Tex. Jan. 31, 2023) (quoting *Cantu v. Rocha*, 77 F.3d 795, 808–09 (5th

Cir. 1996)), *report and recommendation adopted sub nom. Heidi Grp., Inc. v. Tex. Health & Hum. Servs. Comm'n*, No. 1:22-CV-294-RP, 2023 WL 2733402 (W.D. Tex. Mar. 30, 2023), *aff'd in part*, *rev'd in part*, *dismissed in part*, 138 F.4th 920 (5th Cir. 2025).

Official immunity is an affirmative defense. *Perry v. Texas A & I Univ.,* 737 S.W.2d 106, 110 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.). Therefore, the burden is on the defendant to establish all elements of the defense. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex. 1984). "Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994) (citing Baker *v. Story,* 621 S.W.2d 639, 644 (Tex. Civ. App.—San Antonio 1981, writ ref'd n.r.e.)).

Actions involving "personal deliberation, decision and judgment" are discretionary; actions that "require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial." *City of Lancaster*, 883 S.W.2d at 654. An official acts in good faith if a reasonable person in possession of the same information could have believed the conduct was lawful. *Id.* at 656. "An official acts within the scope of her authority if she is discharging the duties generally assigned to her." *Id.* at 658.

Plaintiff argues the individually named defendants defamed him by making statements to licensing authorities "without material context," Pl.'s Am. Compl, ECF No. 37, ¶¶122-23, documenting Plaintiff's ongoing "deficiencies" in his evaluations, *Id.* ¶124, altering his attendance record, *Id.* ¶125, fabricating an ADHD diagnosis, *Id.* ¶126, and reporting allegations of sexual harassment made against Plaintiff. *Id.* ¶¶127-29. All of Plaintiffs allegations are indiscernible as to which individual defendant committed the defamatory acts. Because it is

entirely unclear which defendant is alleged to have defamed Plaintiff, Defendants have not been properly put on notice of which statements each is accused of making. Moreover, all of Plaintiff's allegations are simply activities falling within the scope of the individually named defendants' authority as TTUHSC employees tasked with oversight and managing resident physicians.

Plaintiff's allegations are also discretionary in nature. For example, Plaintiff was placed on probation after his evaluations indicated he was "consistently performing below the level of an intern." *Id.* ¶21. These evaluations require the evaluator to exercise personal deliberation and judgment. The fact that Plaintiff disagrees with them does not make them defamatory. Moreover, Plaintiff only makes conclusory allegations that these actions were taken in bad faith. Additionally, accusing Defendants of acting with "actual malice" without factual support does not establish that any individually named defendant acted in bad faith. These are exactly the type of conclusory allegations that must be rejected at the 12(b) stage. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's allegations when taken as a whole contain paradoxical conclusions. He claims Defendant Catinella "fabricated" his ADHD diagnosis, but his complaint affirms and relies on his ADHD diagnosis as part of his disability discrimination claim. *Id.*, ¶126.

Accordingly, the individually named defendants are entitled to official immunity for statements made in good faith that were part of their discretionary duties falling within the scope of their employment.

Therefore, the Court **RECOMMENDS** that Plaintiff's state law defamation claims be **DISMISSED** because they are barred by official immunity.

> **g)    Plaintiff's Title VII Claims are Barred because Plaintiff did not Exhaust Administrative Remedies.**

Plaintiff brings hostile work environment and retaliation claims based on his national origin pursuant to Title VII. *Id.*, ¶¶58-69, 104-15. Defendants argue that both claims fail because they are premised exclusively on his alleged disability not national origin. Second Mot. to Dismiss, ECF No. 39 at 16-17. In his response, Plaintiff accuses Defendants of claiming "'Plaintiff has not alleged filing of an EEOC charge or receipt of a Right-to-Sue notice.' (Dkt. 39 at 9–10.) That statement is false. Paragraph 7 of the Amended Complaint identifies **EEOC Charge No. 453-2025-00411** and the **Right-to-Sue Notice issued January 29, 2025**. (Am. Compl. ¶ 7.)" ECF No. 44 at 14-15 (emphasis in original).

The exhaustion of administrative remedies is a prerequisite for any Title VII claim. "Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). The Fifth Circuit "construes an EEOC complaint broadly but in terms of the administrative EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). The court uses a "'fact-intensive analysis' of the administrative charge that looks beyond the four corners of the document to its substance." *Id.* "In sum, a Title VII lawsuit may include allegations 'like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'" *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (citing *Sanchez*, 431 F.2d at 465). A Title VII plaintiff is not required to "check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency." *Pacheco v. Mineta*, 448 F.3d at 792 (citing *Sanchez*, 431 F.2d at 463-65). Instead, "the crucial element of a charge of discrimination

is the factual statement contained therein." *McClain v. Lukin Indus. Inc,* 519 F.3d 264, 273 (5th Cir. 2008) (citing *Sanchez*, 431 F.2d at 462).   Where claims brought under Title VII exceed the scope of the EEOC investigation which could reasonably be expected to grow out of the EEOC charge, such claims should be dismissed for lack of jurisdiction. *See Randel v. United States Dep't of the Navy*, 157 F.3d 392, 395 (5th Cir. 1998); *Campos v. Insurance & Bonds Agency of Texas, LLC*, No. SA-12-CV-00799-DAE, 2013 WL 321865, at *5-7 (W.D. Tex. Jan. 28, 2013).

Here, Plaintiff does not allege discrimination based on national origin in his charge nor does he assert any facts that would raise an inference that he is complaining of national origin discrimination against his employer. *See* ECF No. 39, Ex. A, Pl.'s EEOC Charge, at 40-43. He only raises disability discrimination claims. Still, in his response, Plaintiff argues that "Discrimination or retaliation tied to visa status and medical condition plainly implicates both national-origin and disability bases." ECF No. 44 at 15. However, Plaintiff does not even state *his own* national origin or the national origin of any other individual specifically identified in his charge nor his visa status. *See* ECF No. 39, Ex. A, at 40-43.  Moreover, based on the Plaintiff's *own* admissions set forth in "THE PARTICULARS" section of his EEOC Charge, his allegations of discrimination are premised on his belief that he has "been harassed and discriminated against because of my disability in violation of Title I and V of the Americans with Disabilities Act of 1990 & Americans with Disabilities Act of 2008 as amended." *Id.* at 43. The Charge itself only lists "Disability" as the basis for discrimination. *Id.* at 40. National origin is nowhere to be found.

In his complaint, Plaintiff, alleges for the first time that he was retaliated against and suffered a hostile work environment because of his national origin. Plaintiff's EEOC charge makes no claims of unlawful treatment or action on account of his national origin. *See* ECF No. 39, Ex. A. Plaintiff's response that his complaint "is not limited to the boxes checked" is

inapposite and mischaracterizes the law. ECF No.44 at 15. Therefore, the scope of the EEOC's investigation focused on Plaintiff's alleged disabilities, not his national origin. Plaintiff's new national origin allegation cannot be reasonably expected to grow from his disability allegations because it arises from an unrelated classification and is premised on different facts. *See, e.g., Kretchmer v. Eveden, Inc.*, 374 F. App'x 493, 495 (5th Cir. 2010) (finding failure to exhaust because a sex discrimination claim could not reasonably be expected to grow from a charge alleging religious and age discrimination).

Therefore, the Court **RECOMMENDS** Plaintiff's Title VII claims be **DISMISSED** for failure to exhaust all required administrative remedies because national origin discrimination claims cannot be reasonably expected to grow from a charge of disability discrimination.

### 3.    Plaintiff Fails to Plead a *Prima Facie* case of Disability Discrimination under the Rehabilitation Act.

Plaintiff seeks "monetary damages under the Rehabilitation Act based on TTUHSC El Paso's waiver of sovereign immunity through its acceptance of federal financial assistance." First. Am. Compl. ¶ 74. The Rehabilitation Act "was the 'first major federal statute designed to protect the rights of the handicapped people of this country.'" *Flynn v. Distinctive Home Care, Inc.*, 812 F.3d 422, 425 (5th Cir. 2016) (quoting *Fleming v. Yuma Regional Medical Ctr.*, 587 F.3d 938, 940 (9th Cir. 2009)). "It creates a private right of action for individuals subjected to disability discrimination by any program or activity receiving federal financial assistance." *Fleming*, 587 F.3d at 940. The Rehabilitation Act conditions a state's receipt of federal money on its waiver of sovereign immunity. *Pace v. Bogalusa City Sch. Dist.*, 403 F.3d 272, 280 (5th Cir. 2005) (en banc). Thus, "State entities that accept federal funding knowingly and voluntarily waive their sovereign immunity to suit under § 504 of the Rehabilitation Act." *Campbell v. Lamar Inst. of*

*Tech.*, 842 F.3d 375, 379 (5th Cir. 2016). "To state a claim under the Rehabilitation Act, 'a plaintiff must allege that the specific program or activity with which he or she was involved receives or directly benefits from federal financial assistance.'" *Block v. Texas Bd. of L. Examiners*, 952 F.3d 613, 619 (5th Cir. 2020) (citing *Taylor v. City of Shreveport*, 798 F.3d 276, 283 (5th Cir. 2015)) (quoting *Lightburn v. Cnty. Of El Paso, Tex.*, 118 F.3d 421, 427 (5th Cir. 1997)). To state a prima facie claim for disability discrimination under the Rehabilitation Act, the Plaintiff must show that he was (1) disabled within the meaning of Rehabilitation Act, (2) subjected to an adverse action solely by reason of his disability, and (3) otherwise qualified for the program. *Duncan v. Univ. of Tex. Health Sci. Ctr. at Houston*, 469 F. App'x 364, 368 (5th Cir. 2012); see 20 U.S.C. § 794(a); *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002) ("The proper question to be asked in a Rehabilitation Act claim is whether the discrimination took place 'solely because of' the disability.").

Here, Plaintiff claims ADHD and hearing loss as disabilities. Pl.'s Am. Compl., ¶76. However, he does not plead that either of them are a qualifying disability under the Rehabilitation Act. *See id.* A disability is a "physical or mental impairment that constitutes or results in a substantial impediment to employment." 20 U.S.C. § 705(9)(A); *see* 42 U.S.C. § 12102(1). Essential to a qualifying disability is not a diagnosis, but rather how the impairment interferes with one or more major life activities in a substantial manner. *See McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir. 2000). Notably, Plaintiff does not articulate how his hearing loss and ADHD interfere with one or more major life activities, including his employment. Without any indication of how these impairments affect him, Plaintiff fails to establish a recognizable disability under the Rehabilitation Act.

Plaintiff also fails to plead the second element for disability discrimination under the Rehabilitation Act. While Plaintiff's dismissal from TTUHSC's residency is an adverse action, he does not demonstrate that he was dismissed because of his disabilities. Plaintiff does not plead that his hearing loss was a factor in his termination, let alone the only reason. Instead, Plaintiff focuses his allegations on his ADHD diagnosis claiming Defendants utilized it against him by explaining his "repeated failures in punctuality and professionalism." Pl.'s Am. Compl., ¶126. The Fifth Circuit has held that whether a plaintiff's disabilities caused him to engage in the conduct that resulted in the disciplinary action "is of no matter." *Harkey v. NextGen Healthcare, Inc.*, No. 21-50132, 2022 WL 2764870, at \*4 (5th Cir. July 15, 2022). In *Harkey*, the Court distinguished between an adverse action that was because of a disability and an adverse action that was because of the conduct that occurred as a result of the disability. *Id.* at \*3–4. The Fifth Circuit found that the employee's conduct, even if caused by her disability, was the reason for her termination, not the disability itself. *See id.*; *Brantley v. Univ. of Texas at Austin*, No. A-25-CV-00594-ADA, 2025 WL 2060792 (W.D. Tex. July 7, 2025) ("[M]isconduct caused by a disability is not protected under the Rehabilitation Act.").

The same is true here. Plaintiff admits he was placed on probation for "Consistently performing below the level of an early intern." Pl.'s Am. Compl., ¶21. However, he notes that Defendants "used Plaintiff's disability to justify alleged performance issues, treating ADHD-related symptoms as misconduct." Pl.'s Am. Compl., ¶28. Then after months of probation Plaintiff was terminated "on vague claims of not performing at an intern level." ECF No. 39, Ex. A at 40. Accordingly, Plaintiff has not demonstrated he was terminated only because of his disability; thus, his discrimination claim under the Rehabilitation Act should be dismissed

because he failed plead sufficient facts to state a cognizable claim for which relief may be granted.

Therefore, the Court **RECOMMENDS** that Plaintiff's discrimination claims under the Rehabilitation Act be **DISMISSED** for failure to state a claim for relief.

    4.    **Plaintiff Fails to Plead a *Prima Facie* Defamation Claim Against the Individually Named Defendants.**

In Texas, defamation requires "the publication of a false statement of fact to a third party." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). Statements that are not verifiably false are not defamatory. *Marble Ridge Cap. LP v. Neiman Marcus Grp., Inc.*, 611 S.W.3d 113, 124 (Tex. App. – Dallas 2020, pet. dism'd); *see Bentley v. Bunton*, 94 S.W.3d 561, 580 (Tex. 2002) ("[S]tatements that cannot be verified, as well as statements that cannot be understood to convey a verifiable fact, are opinions. Whether a statement is an opinion is a question of law."). Here, nearly all of Plaintiff's allegations of defamatory statements are easily dispelled because they were not published to a third party but instead maintained internally by TTUHSC. The only statement Plaintiff claims was published was that he "broke sterile field several times." Pl.'s Am. Compl., ¶123. Based on the pleadings, Plaintiff does not dispute the veracity of this statement, instead insisting it lacked context. *Id*. Because the statement's truth is not contested, it cannot be defamatory. Accordingly, Plaintiff's defamation claim is dismissed because he did not plead sufficient facts to state a cognizable claim for which relief may be granted.

Therefore, the Court **RECOMMENDS** that Plaintiff's defamation claims be **DISMISSED** for failure to state a claim for relief.

## IV.    CONCLUSION

For these reasons the Court **RECOMMENDS** that Defendants' Second Motion to Dismiss, ECF No. 39, be **GRANTED**. The Court further **RECOMMENDS** that ECF Nos. 47, 49, and 53 be dismissed as **MOOT**.

**SIGNED** this <u>23rd</u> day of January, 2026.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE</u>

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**